WILLIAM WRIGHT *v.* STATE OF INDIANA.

[No. 771S214. Filed August 8, 1972. Rehearing denied October 30, 1972.]

*Charles T. Bate, Soshnick & Bate,* of counsel, of Shelbyville, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by William Wright, appellant (defendant below), from a conviction for armed robbery and kidnapping.* Appellant was indicted by the Marion County Grand Jury and entered a plea of not guilty. After the cause was venued to Hancock Superior Court, the case was tried to a jury which returned a verdict of guilty to both charges. Appellant filed a Motion to Correct Errors which was over-ruled and this appeal followed.

Appellant sets forth five allegations of error.

(1) He claims the on-the-scene confrontation between appellant and the victim shortly after the crime was committed was so suggestive as to render the victim's in-court identification of appellant inadmissible.

(2) Appellant claims the attempted introduction of certain items of evidence was done only to prejudice the jury against appellant and that the judge's instruction on the matter was inadequate to remedy the damage done.

(3) Appellant claims prejudicial error arose from a discussion between two witnesses after a motion for the separation of witnesses had been granted.

---

* This case was reassigned to this office on June 29, 1972.

(4) Appellant claims it was erroneous to give an instruction concerning "flight."

(5) Appellant claims the evidence was not sufficient to sustain the conviction.

The facts of the case are as follows. At around noon on February 21, 1969, James Woodsmall, a diamond salesman, completed a call on a customer at 56th and Keystone in Indianapolis and returned to his automobile. He placed a briefcase containing jewelry into the trunk and then went to unlock his car door. As he was unlocking the door, a man stuck a revolver in Woodsmall's ribs and ordered him to get in the car. The man holding the revolver was wearing a red hooded sweatshirt and dark glasses. He slid in behind the wheel beside Woodsmall and ordered him to unlock the other door to allow another man to climb in. This man who later was identified by Woodsmall as being appellant was described as wearing a dark coat, dark slacks, and glasses with silver side frames. He was described as being in his forties, about 190 pounds, with gray hair. The car then sped away east on 56th Street. As they were speeding down the street, Woodsmall noticed a policeman at the side of the road where some repairs were being made. In order to attract the officer's attention Woodsmall grabbed the steering wheel causing the car to weave back and forth across the road. The man on the passenger side then grabbed Woodsmall's hands and held them. While his hands were being held the driver reached in and removed Woodsmall's billfold containing $475.00. After a few miles, the men turned onto an unimproved road and came into the back of an apartment complex. The car stopped and both men leaped from the car and fled. A tenant from the apartment complex heard the car stop and saw the two men running from the car. Her only description of the men was that one was of medium build and one had a red hat on. She walked down to the car and saw Woodsmall who she described as being "very very white" and "very very shot." The police arrived a few minutes later and received a descrip-

tion of the men from Woodsmall. About one-half hour later, appellant was seen by a police officer walking through the apartment complex. Although the temperature was 35 to 45 degrees, appellant wore no coat. He was wearing a dark short sleeved banlon shirt, dark trousers, and glasses with silver side frames. His hair was graying in front. Appellant was taken into custody by the officer, and, a short time later, Woodsmall was taken to look at appellant. Woodsmall stated that he could not be sure that this was one of the men. At trial, Woodsmall stated the reason for his indecision:

> "I was nervous and confused and I didn't want to be too fast about it or to make a false accusation. I waited for an hour or so until I simmered down. By the time I got to the bank I had simmered down and I knew."

He stated that he was then sure that appellant was one of the culprits. Woodsmall was able to get a full front view of appellant when appellant initially climbed into the car and had a side view of him for the course of the ride which lasted about five minutes. Later that day a red hooded sweat shirt and a revolver were found in a trash can at the rear of one of the apartment buildings. Woodsmall's billfold was found on the grounds of the apartment complex but it contained no money. No money was ever found nor was the dark sport coat which Woodsmall said appellant was wearing. Woodsmall testified that he was extremely frightened by the ordeal.

The first issue is whether the on-the-scene confrontation between appellant and Woodsmall was so suggestive as to render the in-court identification of the appellant inadmissible. We do not believe it was. This Court has previously stated that the *Wade-Gilbert* rules concerning the right to counsel at a line-up do not apply to on-the-scene confrontations occurring a short time after the crime was committed. See, *Martin* v. *State* (1972), 258 Ind. 83, 279 N. E. 2d 189; *Dillard* v. *State* (1971), 257 Ind. 282, 274 N. E. 2d 387; *Parker* v. *State* (1970), 254 Ind. 593, 261 N. E. 2d

562; *McPhearson* v. *State* (1969), 253 Ind. 254, 253 N. E. 2d 226.

The question then becomes whether the procedures were so suggestive as to violate due process. See, *Stovall* v. *Denno* (1967), 388 U.S. 293; *Dillard* v. *State, supra; Parker* ■ v. *State, supra.* The test is, when looking at the totality of the circumstances, whether the on-the-scene confrontation was conducted in a manner so unnecessarily suggestive and conducive to irreparable mistaken identification that it denied the defendant due process of law. *Stovall* v. *Denno, supra; Dillard* v. *State, supra; Parker* v. *State, supra.* It must be noted that any one-on-one confrontation is somewhat suggestive and we again urge our law enforcement officers to attempt to minimize the suggestive influences as much as possible. However, the suggestive influences here were not so great as to lead to irreparable mistaken identification. It is not clear from the record whether appellant was handcuffed but the procedure used must have indicated to Woodsmall that they considered appellant a possible suspect. However, Woodsmall was left free to view appellant and was not pressured by the police for an answer one way or the other. Woodsmall had ample opportunity to observe his robber-kidnappers during the course of their ride and the confrontation occurred a short time after the crime. It is also clear that Woodsmall did not allow himself to become influenced by any suggestive pressures which might have been present, for he refused to make any positive identification until he had calmed down and his mind was clear. He testified at trial that he was sure that appellant was one of the men and indicated he would not be testifying in court were he not absolutely sure. After looking at the totality of the circumstances we simply cannot say that the influences were so impellingly suggestive or conducive to misidentification as to result in a denial of due process of law.

The next issue is whether the prosecutor's conduct in attempting to introduce certain items into evidence which the

judge ruled inadmissible was so prejudicial as to require a reversal, and, additionally, whether the trial judge's instruction on this matter was sufficient to cure any alleged prejudice which may have been done. The items with which we are concerned are the red hooded sweatshirt and revolver which were found in a trash can the evening of the crime. There can be no doubt that the items were relevant since Woodsmall testified that appellant's companion had such a pistol and was wearing such a sweatshirt. The fact that the judge later ruled the evidence inadmissible because not sufficiently connected to the incident does not indicate any purposeful attempt by the prosecutor to prejudice appellant's case. It was certainly not patently obvious that the exhibits would be held inadmissible. Under the circumstances of this case, we do not feel the prosecutor was guilty of misconduct for there is certainly no evidence that bad faith prompted his actions. See, *Denny* v. *State* (1921), 190 Ind. 76, 129 N. E. 308; 23A C.J.S. *Criminal Law* § 1087 at 115-116.

In addition, whatever harm accrued to defendant was cured by the trial judge's instruction to the jury on this matter. The instruction given was as follows:

"You are not to consider as any evidence whatever portions of the evidence which have been ruled inadmissible by the Court . . ."

This was certainly sufficient.

The next issue is whether prejudicial error arose when two witnesses were seen speaking to each other after a motion for separation of witnesses had been granted. The incident came during a break in Woodsmall's testimony. He stepped down from the stand and walked to the table of the prosecuting attorney. Sitting with the attorney at counsel table was Detective Parnell, the chief investigator in the case, who was assisting the prosecution, and who was also a witness for the prosecution. Parnell had been instructed

by the prosecutor not to talk to any of the witnesses, and the only thing Parnell told Woodsmall was to "stay calm." The rest of the conversation was exclusively between Woodsmall and the prosecutor. Although Detective Parnell overheard the conversation, he was present for all the testimony in the case as an aide to the prosecutor. Allowing an officer to remain at counsel table to help the prosecutor after a separation of witnesses was ordered has been held to be permissible. *Hilligoss* v. *State* (1970), 253 Ind. 443, 255 N. E. 2d 101. Thus, since Detective Parnell was present for all the testimony anyway, the fact that he heard the discussion between the prosecutor and Woodsmall could have had no substantial effect on the case. Such an innocuous encounter is certainly not cause for reversal.

In the alternative to granting a mistrial on this issue appellant tendered an instruction on this matter which was refused. He claims that since the judge refused to grant a mistrial, he should have given the instruction and that it was reversible error not to do so. His tendered instruction reads as follows:

"I instruct you that detective Parnell and James Woodsmall who are witnesses in this case discussed their testimony together after the court had issued an order separating the witnesses, and you may consider this fact when you retire to the jury room to deliberate your verdict.

Separation of witnesses means that when the court orders witnesses separated, they should not discuss their testimony or evidence after the order of the court."

There is, however, no evidence in the record that Parnell and and Woodsmall in fact discussed their testimony. On the contrary, Parnell testified that he merely made one short statement to Woodsmall which was totally unrelated to the evidence in the case. Also the matter of separation of witnesses is a concern of the trial judge and is within his discretion. See, *Johnson* v. *State* (1972), 258 Ind. 648, 283 N. E. 2d 532. It is not a matter of concern for the jury. It

was therefore not erroneous for the trial court to refuse this instruction.

The next issue is whether it was erroneous to give an instruction on "flight." The instruction in question reads as follows:

"You are instructed that you may consider evidence of the flight of the accused, if any, as showing consciousness of guilt, along with all the other evidence in the case."

Appellant claims it was error to give the instruction because there was no evidence adduced at trial that he fled. However, the evidence clearly showed that both appellant and his compatriot fled from the car after stopping in the apartment complex. Also, Woodsmall testified that one of the men remarked during the course of the ride that they had a "tail." This would allow a reasonable inference by the jury that the men were not only fleeing the scene of the crime but also out of fear that police were in pursuit. We therefore are of the opinion that the instruction was both relevant and proper.

The final issue is whether the evidence was sufficient to support the conviction. When reviewing the sufficiency of the evidence this court will not weigh the evidence nor determine the credibility of the witnesses. Only that evidence most favorable to the state and the reasonable inferences to be drawn therefrom will be considered. As long as there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt the verdict will not be disturbed. *Jackson* v. *State* (1971), 257 Ind. 477, 275 N. E. 2d 538. Appellant does not claim that the State failed to prove any of the elements of the crimes but bases his contention on the fact that no money was ever recovered and an alleged insufficient identification of appellant as one of the participants. Recovery of the stolen money and its production at trial are not essential to prove the crime was committed, nor are they necessary to convict a defendant. *Jackson* v. *State, supra.* We have

here the uncontradicted testimony of Woodsmall that his billfold was taken, that it contained $475.00, and that appellant participated in the taking by violence and putting in fear. There is also testimony that appellant's billfold was later found and that it then contained no money. This evidence was sufficient for the jury to believe that money was taken from Woodsmall's person. We also find no merit in appellant's contention that the evidence was insufficient to identify him as one of the participants. Woodsmall testified that he was sure appellant was one of the men and this testimony was uncontradicted. Any weakness in Woodsmall's identification would go to his credibility which is for the jury to consider and not this Court. The evidence was clearly sufficient to sustain the convictions.

For all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 285 N. E. 2d 650.