HOWELL O. ATKINS *v.* STATE OF INDIANA

[No. 3-377A77. Filed December 28, 1977. Rehearing denied February 7, 1978.]

*Harriette Bailey Conn,* [*Mrs.*], Public Defender of Indiana, *Lawrence D. Giddings, Bobby Jay Small, David P. Freund,* Deputy Public Defenders, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

STATON, P.J.— A jury found Howell O. Atkins guilty of robbery. He was sentenced to the Indiana Department of Corrections for a period of not less than ten (10) nor more than twenty-five (25) years. In his appeal to this Court, Atkins raises the following issues:

(1) Did probable cause exist for a warrantless arrest?

(2) Was an on-the-scene confrontation unnecessarily suggestive?

(3) Did the trial court err in denying Atkins' oral motion for a continuance made on the day the trial was to begin?

(4) Was the jury properly instructed?

We find no error, and we affirm.

## I.

### Probable Cause

Atkins' first contention is that the police officers who arrested him did not possess the probable cause required to make a warrantless arrest, thus rendering certain evidence taken from Atkins in a subsequent search inadmissible. The test for probable cause to make an arrest is whether at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man of reasonable caution in believing that the person about to be arrested had committed or was committing an offense. *Smith v. State* (1971), 256 Ind. 603, 271 N.E.2d 133.

The evidence discloses that on April 1, 1976, Paul Jewell, a police officer, received a radio dispatch that two black males had robbed a bakery. As Jewell proceeded to the bakery, he observed two black males, one of whom was Atkins, running in an easterly direction away from the bakery. The men were running through alleys and backyards and were jumping over fences. Jewell gave chase; he shouted to Atkins that he was a police officer and instructed Atkins to stop. Atkins continued to run. Under these circumstances, probable cause for a warrantless arrest did, in fact, exist.

## II.

### Identification

The clerk who was working at the time of the robbery told the police that the two perpetrators were tall black men, one wearing a grey ski-type cap, the other wearing a colorful plaid jacket. Ten minutes after the robbery, police officers returned to the bakery with two handcuffed men, one of whom was Atkins. The clerk

identified the two men as the perpetrators of the robbery. Atkins contends that the trial court should have suppressed testimony of the pre-trial identification because the confrontation was extremely suggestive.

The test, as formulated by the United States Supreme Court, is whether the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law. *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. In the instant case we are dealing with an on-the-scene confrontation. Confrontations occurring immediately after the commission of an offense are not per se unduly suggestive, even though the accused is the only suspect present. *Wright v. State* (1972), 259 Ind. 197, 285 N.E.2d 650. However, this does not necessarily mean that every on-the-scene confrontation will pass the *Stovall* test. *Parker v. State* (1970), 254 Ind. 593, 261 N.E.2d 562. Whether an on-the-scene confrontation is overly suggestive must be determined from the total circumstances. *Hampton v. State* (1977), 172 Ind. App. 55, 359 N.E.2d 276. Thus, while the period of time between the commission of the crime and the confrontation is an extremely important factor, it is not the only factor which must be considered.

The facts indicate that the two suspects were taken to the bakery immediately upon their apprehension and within ten minutes of the robbery. The police did not pressure the clerk or force her to identify the suspects as the perpetrators. Atkins places great emphasis on the fact that two men participated in the robbery and only two men were taken to the bakery for identification. Any one-on-one, or, as in this case, two-on-one, confrontation is somewhat suggestive. *Wright, supra.* The issue, however, is whether the confrontation was *unnecessarily* suggestive. *Stovall, supra.* Thus, the fact that only two suspects were shown is not dispositive. Atkins also places emphasis on the fact that the clerk based her identification primarily on the clothes worn by the suspects, as opposed to any distinguishing physical characteristics. We feel that that fact goes to the credibility of her identification and not its admissibility. It is true

that the clerk was told in advance that two suspects were being brought to the bakery. It is also true that the suspects were handcuffed when they arrived. However, upon examining the totality of circumstances, we find that the on-the-scene confrontation was not unnecessarily suggestive.

## III.

### Continuance

The trial was originally scheduled to begin on August 9, 1976. On July 28, Atkins was injured in a jailhouse fight. He had prepared a list containing the names and addresses of witnesses he intended to call to testify in his behalf. Following the fight, jail authorities searched several cells in an effort to locate weapons and, according to Atkins, confiscated that list. On July 29, Atkins filed a petition for a continuance. His petition stated that, due to the injuries he received in the altercation and the confiscation of his list of witnesses, he was not able to proceed to trial. The trial court granted the continuance and reset the trial for September 7, 1976. On September 7, Atkins orally moved for still another continuance. He cited the confiscation of the list and his efforts to employ private counsel as the reasons for his request. Atkins claims that the trial court erred in denying his request.

No attempt was made to comply with the procedures set forth by IC 1971, 35-1-26-1, Ind.Ann.Stat. § 9-1401 (Burns 1956). As a consequence, the ruling on the motion was within the discretion of the trial court and will be upheld in the absence of a clear showing of an abuse of that discretion. *Dockery v. State* (1974), 161 Ind. App. 681, 317 N.E.2d 453.

Before the motion was denied, the following colloquy took place between the Judge, Atkins, and Atkins' court-appointed counsel:

"THE COURT: You have indicated in your motion that there are additional witnesses that you wish to call?

"THE DEFENDANT: Yes, see, like he described it. At first there are the people that come up to search. They're looking for razor blades and in the process, they threw away all

my personal belongings and I haven't been able to contact these people. I lost touch with them and I do have a few more other people I'm trying to get in contract with, you know.

\* \* \*

"MR. BRADLEY:" Some of these witnesses would indicate — One of them we have been unable to locate apparently saw Mr. Atkins on the morning of the incident. Another had seen him the day before and would be in to testify as to what belongings he already had in his possession before the incident occurred and they would go directly to evidence that I think the State will try to introduce to tie into the crime.

"THE COURT:" What's the prospect that these witnesses would be available later?

"MR. BRADLEY:" We know they're here locally, because Mr. Atkins has had contact with them. One young lady has come up and seen him in the jail, although that was a few days ago, I have been attempting to reach her since last week. We know she is here. We just aren't sure whether we're going to be able to get her by the time we are ready to move on our part of the case.

"THE COURT:" Do you have subpoenas issued?

"MR. BRADLEY:" They will be going out this morning before lunch and I think Mr. Stanley is also going to try to help me out on trying to run these people down."

We cannot see how the confiscation of the list hindered the preparation or presentation of Atkins' defense. Atkins' apparent inability to procure the attendance of those witnesses[1] was due

---

1. Atkins did not name the witnesses he was trying to locate. Since several people ultimately did testify in his behalf, we cannot say that Atkins was, in fact, unable to procure the attendance of the witnesses alluded to in the request for the continuance.

not to the confiscation but to his own neglect. He knew that the people were in town; he had contact with them, but he failed to have subpoenas issued until the day of the trial. He has not shown what, if anything, was done in the weeks before trial to procure the attendance of the witnesses.

There were several options available to Atkins. He could have had the subpoenas issued earlier. He could have complied with the aforementioned statute and requested the continuance earlier. He chose to do neither. It is important that an accused in a criminal matter be afford the opportunity to procure the attendance of witnesses who will testify in his behalf. However, an accused cannot sit idly for weeks, wait until the day of the trial and until after the jury has been sworn, and then, under these circumstances, expect the trial court to automatically grant his request for a continuance.

Likewise, Atkins cannot prevail with his conention that he was not afforded adequate time to employ private counsel. Atkins was arrested on April 1 and the trial did not begin until September 7. The trial court appointed pauper counsel on April 5. Atkins did not express dissatisfaction with his appointed counsel, nor did he indicate why five months was not enough time to employ private counsel. Atkins failed to exercise the right to select his own counsel at an appropriate stage of the proceedings. *See Smith v. State* (1975), 165 Ind. App. 37, 330 N.E.2d 384. Additionally, we note that the private attorney ultimately chosen by Atkins was allowed to participate in the trial. Thus, Atkins had the services of a private attorney and a court-appointed attorney. The trial court did not abuse its discretion in denying the continuance.

IV.

Instructions

The following instructions, among others, were read to the jury:

Court's Instruction Number 8

"Any fact which must be proven during a trial may be proven by the direct evidence of eye witnesses or combination of both kinds of evidence. Circumstantial evidence should be

considered by the jury all cases. When it is strong and satisfactory, the jury should so consider it, neither enlarging or belittling its force. When circumstantial evidence, considered with all of the other evidence in the case, convinces you of the defendant's guilt beyond a reasonable doubt, you should act upon that conviction and return a verdict of guilty.

"Where the evidence in a case of entirely circumstantial and is capable of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence."

### State's Instruction Number 2

"You are instructed that the necessary criminal intent to take property from the person of another and to convert to the use of the defendant, by violence or fear, may be proved by direct evidence that the defendant intended to take the property of someone else and convert it to his use.

"If you find beyond a reasonable doubt from the evidence in this case that money belonging to Kreamo Bakery Company was taken from the possession of Zenobia Migas by the defendant, you may infer that the defendant intended to convert the property to his own use."

Atkins objected to the giving of the State's Instruction No. 2, claiming that it was repetitive of the Court's Instruction No. 8 and that it placed undue emphasis on the matter of circumstantial evidence. We find no merit in this contention. The Court's Instruction No. 8 concerns itself with the application of circumstantial evidence to the fact-finding process. The State's Instruction No. 2 focuses on the element of intent. The jury was properly instructed.

Affirmed.

Garrard, J. and Robertson, C.J., (By designation), concur.

NOTE—Reported at 370 N.E.2d 985.