STATE OF INDIANA *v.* WILLIAM WRIGHT.

[No. 876S279. Filed February 10, 1978.
Rehearing denied May 15, 1978.]

*Theodore L. Sendak,* Attorney General, *Daniel Lee Pflum,* Deputy Attorney General, for appellant.

*John E. Eisele,* of Anderson, *Julius Lucius Echeles,* of Chicago, Illinois, for appellee.

HUNTER, J.—This is an appeal by the state from the granting of a Post Conviction One petition. It presents two issues for review:

1.   Whether the petitioner met his burden of proof in attempting to show that the state failed to disclose exculpatory evidence; and

2.   Whether the court erred in not making a finding on the state's defense of waiver.

The petitioner, Wright, was tried in 1969 on charges of armed robbery and kidnapping.  He was found guilty and subsequently raised five issues on appeal.  This Court affirmed the trial court on all five issues.  *Wright* v. *State,* (1972) 259 Ind. 197, 285 N.E.2d 650.

In his post conviction petition, Wright alleged that the showing of his prior criminal record to the victim prior to positive identification was exculpatory evidence which the state failed to disclose.  At the hearing on the petition, the court agreed with Wright, granted his petition and ordered a new trial.  The court granted relief on the theory that the prosecutor's failure to provide Wright with certain exculpatory evidence violated the requirements of due process enunciated in *Brady* v. *Maryland,* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and *Fair* v. *State,* (1969) 252 Ind. 494, 250 N.E.2d 744.

The evidence which was not disclosed was brought out at the post conviction relief hearing.  The police officer testified that the victim *may* have seen Wright's prior criminal record prior to an identification at police headquarters.  He also said that there *may* not have been a positive identification made prior to this time.  However, the victim testified at the trial

that he was positive of the identification about an hour after the crime.

A summary of the testimony from the record reveals the following.

In February of 1969, James Woodsmall was robbed by two men. He was forced to sit between the two men in the front seat of his car and was driven around for about five minutes. The two robbers abandoned the car in the parking lot of an apartment complex. The petitioner, Wright, was arrested in this area about one-half hour later. Woodsmall was taken to look at the petitioner at that time but stated he could not be sure this was one of the robbers. At the original trial, Woodsmall stated the reason for his indecision:

> " 'I was nervous and confused and I didn't want to be too fast about it or to make a false accusation. I waited for an hour or so until I simmered down. By the time I got to the bank I had simmered down and I knew.'
>
> "He stated that he was then sure that appellant was one of the culprits. Woodsmall was able to get a full front view of appellant when appellant initially climbed into the car and had a side view of him for the course of the ride which lasted about five minutes." *Wright, supra,* 259 Ind. at 200, 285 N.E.2d at 652.

Woodsmall further testified at trial that he was sure that petitioner was one of the men and indicated he would not be testifying in court were he not absolutely sure.

### I.

Our analysis begins with the recognition that the trial court's assumption that *Brady, supra,* is fully applicable here is erroneous. That case involved prosecutorial suppression of exculpatory evidence after a specific request by the defense for the evidence. The United States Supreme Court has further interpreted the *Brady* rule in situations involving voluntary disclosure in *United States* v. *Agurs,* (1976) 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342. The Court held that a prosecutorial nondisclosure is a constitutional error only when the

undisclosed evidence "creates a reasonable doubt that did not otherwise exist," and "the omission must be evaluated in the context of the entire record." *Id.* 427 U.S. 112, 96 S.Ct. 2402, 49 L.Ed.2d 355.

By this standard, Wright's petition must fail. The evidence viewed in the light most favorable to the petitioner is in the nature of speculations. It is not in itself exculpatory. In view of the facts brought out in the original trial, these speculations do not raise a reasonable doubt about Wright's guilt. The victim testified twice at the trial that he was sure shortly after he left the scene that petitioner was one of the kidnappers. He explained his unwillingness to identify at the scene, and he gave strong and unequivocal identification testimony.

Furthermore, there was no claim of actual suppression of any evidence. The prosecutor told the defense counsel he could see all of the state's files on the case. The possibility of error in an identification must always be considered by defense counsel. The defense was free at any time before or during the original action to question the police and the victim as to the details of the identification procedure. The police officer testified at the post conviction relief hearing that the defense counsel at the original trial had never asked him any questions about the identification. It is not the duty of the prosecution to bear the burden of assembling the defense counsel's evidence. *Ortez* v. *State,* (1975) 165 Ind. App. 678, 333 N.E.2d 838.

As the United States Supreme Court noted, the ultimate issue is whether the prosecutor's omission is of *sufficient significance* to result in a denial of the defendant's right to a fair trial.

"[T]here is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.' . . . The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of

the trial, does not establish 'materiality' in the constitutional sense." *Agurs, supra,* 427 U.S. 109, 110, 96 S.Ct. 2400, 49 L.Ed.2d 353.

The uncertainty of the police officer's testimony considered with the positive statements of the victim about his identification at the original trial means that the evidence at the post conviction relief hearing does not meet the materiality standard of *Agurs.* Petitioner has failed to carry his burden of proof in showing that the prosecutor was required to voluntarily disclose this evidence.

Perhaps the trial court was not aware of the interpretation of *Brady* enunciated by *Agurs,* but in light of the *Agurs* standard the finding of the trial court is contrary to law and must be reversed.

## II.

The state also contends that the trial court erred in not making a finding on the defense of waiver. The state properly raised the defense of waiver at the post conviction relief hearing. This Court has held that when a defense of waiver is raised, the petitioner must then present some substantial basis or circumstance which would satisfactorily show why such grounds were not waived. *Langley* v. *State,* (1971) 256 Ind. 199, 267 N.E.2d 538. Due to our disposition of this case on issue one, we do not have to consider whether there was a substantial basis shown here to overcome the defense of waiver.

For all the foregoing reasons the decision of the trial court on Wright's petition for post conviction relief is erroneous and should be reversed and remanded with instructions to reinstate the original judgment and sentence.

Judgment reversed.

Givan, C.J., and Pivarnik, J., concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

DEBRULER, J.—Among the specific findings of fact made by the trial court pursuant to Ind. R.P.C. 1, § 6, paragraph 6 is central to the resolution of this appeal. That paragraph follows in full:

"6. The Court further finds that James H. Woodsmall could not, and did not, identify the petitioner herein in a face to face confrontation with petitioner immediately after the alleged incident; and that *James H. Woodsmall appeared at a preliminary hearing in Marion County, Indiana, in Municipal Courtroom 6 on February 22, 1969, and that James H. Woodsmall could not identify petitioner at said hearing;* and that James H. Woodsmall appeared again in Marion County Municipal Courtroom 6 on February 27, 1969, and did on said occasion identify petitioner as one of the persons who allegedly robbed and kidnapped him." (Emphasis added.)

The suggestive face-to-face confrontation between appellee and Woodsmall, referred to in the finding, occurred on February 21, 1969, in the immediate aftermath of the abduction of Woodsmall. Woodsmall did not identify appellee at that time. The crucial part of this finding is the fact presented that on February 22, the very next morning after the fruitless confrontation at the scene, Woodsmall appeared in Municipal Courtroom 6 and still could not identify appellee. If a jury believed that Woodsmall could not make a positive identification of appellee on the 22nd, it would certainly not believe his statement that he first became certain of his identification of appellee on the 21st, within an hour or so after the on-the-scene meeting. If a jury did not believe that statement of Woodsmall, it is very likely that it would conclude that the positive identification of appellee by Woodsmall, first communicated by Woodsmall to the police or anyone immediately prior to the hearing in Municipal Courtroom 6 on the 27th of February, was the product of the suggestiveness of the photographic line-up at which appellee's criminal record was on display and the on-the-scene confrontation. As a result of that the jury would have given little weight to Woodsmall's

identification of appellee and therefore a reasonable doubt has been shown to have arisen from the failure of the prosecution to disclose the employment of the suggestive photographic identification procedure utilized on the 27th of February.

The foregoing conclusion rests upon paragraph 6 of the trial court's findings. It remains to be determined whether that paragraph is supported by sufficient evidence. The trial judge heard the testimony of the officer in charge of the case that appellee and Woodsmall appeared in court on the 22nd of February. The officer then unequivocally testified that Woodsmall identified appellee that morning. Under further questioning the officer admitted that he did not remember whether Mr. Woodsmall identified appellee on the 22nd or not. He further testified that if Woodsmall had made a positive identification prior to the 27th, there would have been no reason to employ the photographic identification procedure in preparation for the hearing on the 27th. Contrary to this testimony, the witness later suggested a reason to employ a photographic line-up under such circumstances.

The trial judge heard this testimony, and while it was not unequivocal, the judge was warranted in basing his finding in paragraph 6 upon it. The judgment of the trial court should be affirmed.

Prentice, J., concurs.

NOTE.—Reported at 372 N.E.2d 453.