**Phillip Lynn SCHUTZ, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1279S337.

Supreme Court of Indiana.

Jan. 6, 1981.

Rehearing Denied March 11, 1981.

Forrest B. Bowman, Jr., S. Sargent Visher, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Jeff G. Fihn, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Phillip Lynn Schutz, was convicted by a jury of voluntary manslaughter, Ind.Code § 35–42–1–3 (Burns 1979 Repl.), and sentenced to twenty years' imprisonment. His direct appeal raises the following issues:

1. Whether the trial court erred in admitting defendant's confession into evidence; and

2. Whether the trial court erroneously refused to dismiss the information against defendant and later erroneously refused to exclude the testimony of one of the state's witnesses after tape cassette recordings of her statements to police were destroyed.

A statement of the facts from the record most favorable to the state shows that on February 9, 1979, defendant was living with Lori Johnston and Lori's one–year old daughter, Stacy. On that evening, several persons got together at their residence. During the course of the evening, large amounts of hard drugs, marijuana, whiskey and beer were consumed by all persons. Later, in the early morning hours, defendant was awakened by Stacy's crying. He got up, changed her diaper and attempted to quiet her crying. When the child continued to cry, defendant became angry, grabbed her by the neck, hit her with his fists and threw her on the floor. Stacy subsequently died from a subarachnoid hemorrhage in the brain.

Officers Halligan and Harless responded to a call for assistance for an injured or sick child. Defendant admitted them to the house and told them the baby was in the back room. The child was being held by Lori on the bed and wasn't breathing. The officers immediately started administering first aid to the child. Officer Harless orally advised defendant of his rights at that time. After the medic unit arrived and took the child to the hospital, another officer read the complete rights form to defendant. Defendant appeared nervous but stated that he did understand his rights. Both he and Lori then agreed to go to the police station for questioning.

At the police station, defendant was put in an interview room by himself. Police Officer Burgess entered several times to ask defendant if he needed anything. Defendant inquired on at least two occasions about the baby's condition. The second time defendant inquired, Burgess responded that the baby was gone. At this point defendant started crying deeply. Officer Burgess then left defendant alone. About one hour later, another officer told Burgess that he had looked into the interview room and that defendant was "acting kind of funny, maybe trying to do himself in." Several officers went to the interview room to check on defendant. When they entered the room, defendant was standing there with his belt lying on the floor. He had a small cut on his chin. He was weeping and said, "I didn't mean to kill her."

A short time later, defendant agreed to give a statement to the police. Officer Burgess read a waiver of rights form to defendant and defendant signed this form. Burgess orally advised defendant that he could stop the questioning at any time. He testified that defendant had calmed down some although he still appeared upset. Defendant then gave his voluntary statement about the incident which was tape recorded by the police. The record shows that this statement was given at 11:35 a. m., approximately four hours after defendant had been brought to the police station.

## I.

Defendant first contends that the trial court erred in admitting into evidence his tape recorded statement. He contends that it was not knowlingly and voluntarily given and was the product of his unlawful detention for investigation and interrogation.

The question of the admissibility of a statement or confession is controlled by determining from the totality of circumstances whether or not the confession was given voluntarily and not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused. *Arch v. State*, (1978) 269 Ind. 450, 381 N.E.2d 465; *Pawloski v. State*, (1978) 269 Ind. 350, 380 N.E.2d 1230; *Works v. State*, (1977) 266 Ind. 250, 362 N.E.2d 144. The question of voluntariness is one for the trial court. We review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial evidence of probative value to support the trial court's finding. This is true even though conflicting evidence is presented to the trial court on the issue of voluntariness. *Arch v. State, supra; Riggs v. State*, (1976) 264 Ind. 263, 342 N.E.2d 838.

In the instant case, we first note that there is no evidence of an illegal detention. The police officers were admitted voluntarily to Lori Johnston's residence. They observed that the injured child wasn't breathing and that the nature of her injuries indicated she had been abused. Defendant and Lori Johnston, the child's mother, were the only two persons present with the child. Defendant was advised of his rights two times and voluntarily went with police to the station for questioning.

We also must consider the other circumstances surrounding the giving of the statement. Defendant testified that he didn't remember having his rights read to him. He also testified that he was induced to give his statement because a police officer told him it would go easier on him if he gave a statement. However, the record clearly shows that a waiver of rights form was signed by defendant at 11:30 a. m. He had been advised of his rights two times before he was taken to the police station. He also signed another form at the end of his typed statement which acknowledged that he had been given his rights before he gave the voluntary statement.

In the instant case, there is no evidence of any prolonged interrogation, any coercive treatment or any physical abuse. It has often been held that vague statements by the police such as "seeing what they could do for him" or it would "be in his best interest to tell the real story" are not sufficient inducements to render a subsequent confession inadmissible. *Turpin v. State*,

(1980) Ind., 400 N.E.2d 1119; *Ortiz v. State,* (1976) 265 Ind. 549, 356 N.E.2d 1188. Defendant was at the police station only a few hours before he gave his statement. We find no circumstances here indicating any unusual or coercive action by the police which logically would have misled defendant or overborne his will in regard to his voluntary statement. There was substantial evidence to support the trial court's finding of voluntariness.

## II.

The police took two tape recorded statements from Lori Johnston on the morning of the incident. They took another statement from her a month later, when an agreement was reached that charges against her would be dismissed in exchange for her cooperation. They also conducted tape recorded interviews with three other prospective witnesses. The police testified that it had been department policy for twelve years to erase tape recordings of witnesses *after their statements had been* transcribed in order to reuse the tape cassettes. Tape recordings of an accused's statements were not erased. Defendant now claims that the erasure of the tapes constituted a deliberate destruction of evidence which violated his due process rights. He contends that the erased recordings were a more complete, more informative record than the typed transcriptions. He alleges that after the erasures there was no way to check on the accuracy of the transcripts to determine whether anything was omitted which might prove exculpatory material for defendant. We find no merit to these contentions.

Defendant first moved for a dismissal of the information when he found out about the erasures. He also objected to Lori Johnston's testimony when she was called to testify by the state. It is clear that the motion to dismiss the information was properly denied. We have long held that an indictment or information may not be questioned on the ground of insufficient evidence. The sufficiency of the evidence is decided at trial. *Hubbard v. State,* (1974)

262 Ind. 176, 313 N.E.2d 346; *Stephenson v. State,* (1932) 205 Ind. 141, 179 N.E. 633.

It is also well settled that a prosecutor has discretion in determining whether particular nonmaterial evidence should be produced, retained, or destroyed. It is the negligent destruction or withholding of material evidence by the police or prosecutor which may present grounds for reversal. *Turpin v. State, supra; Birkla v. State,* (1975) 263 Ind. 37, 323 N.E.2d 645; *Hale v. State,* (1967) 248 Ind. 630, 230 N.E.2d 432. There is no claim here of the intentional destruction of any evidence. There is only speculation about a possible loss because the actual tape cassettes were not retained. The possibility of an omission of some exculpatory evidence in a particular witness's statement must always be considered by defense counsel. We do not see that the retention of a typed transcript rather than the tape cassette itself significantly affects the possibility of an omission. The defense has ample opportunity to correct any such omission through independent investigations, depositions and cross–examination. It is not the duty of the prosecution to bear the burden of assembling the defense counsel's evidence. *State v. Wright,* (1978) 267 Ind. 590, 372 N.E.2d 453.

In the instant case, defendant had a complete transcript of the witness's statement available for impeachment purposes. He was able to depose the witness if he wished and she was available for cross–examination. Under these circumstances, we find no prejudice to defendant in the destruction of the tape cassettes and no violation of his due process rights.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.