**Denver CLIFFORD, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

**No. 982S355.**

Supreme Court of Indiana.

Jan. 3, 1984.

⟜641.6(3)

Patrick L. McCarty, McCarty & Tucker, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Denver Clifford, was convicted by a jury of robbery, a Class B felony, Ind.Code § 35–42–5–1 (Burns 1983 Suppl.) and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1983 Supp.) and was sentenced to the Indiana Department of Correction for a term of fifty years. His direct appeal raises the following eight issues:

1. Whether the trial court erred in denying defendant's motion to suppress the admission of evidence found in the house where he was arrested;

2. Whether defendant's right to counsel was denied when he was not allowed to discharge his appointed attorney and proceed *pro se;*

3. Whether the trial court erred in denying defendant's motion to dismiss because the state destroyed a relevant and material tape recording;

4. Whether the trial court erred in failing to hold a hearing to determine defendant's competency to stand trial;

5. Whether the trial court erred in permitting an attorney to pass notes to a witness;

6. Whether defendant was prevented from properly cross-examining the state's key witness;

7. Whether the trial court prevented defendant from presenting a complete final argument; and

8. Whether defendant was entitled to attack the constitutional validity of his prior convictions during the habitual offender phase of the trial and whether there was sufficient evidence to support that conviction.

A brief summary of the facts from the record shows that defendant and an accomplice, Kevin Stewart, robbed the Sheraton Inn in Anderson, Indiana on November 29, 1979 and took approximately two thousand dollars. The men then went to Muncie, Indiana, to the home of a friend, Dereck Reason. Reason later contacted the police

and told them who had committed the robbery.

## I.

Defendant first contends that the trial court improperly denied his motion to suppress the admission of evidence found in the house where he was arrested. On February 6, 1980, police officers from Muncie, Anderson, and Connersville received information that defendant was staying at a certain address in Muncie, Indiana, and they went to that location. When they arrived, they saw defendant leaving the house and he was then arrested in the alley behind the house. After the arrest, police entered the house and found two weapons in plain view, a sawed-off shotgun which belonged to defendant and a .357 Magnum which had been loaned to him and was under his control.

The state contends that the search was a valid search incident to arrest because the police had been informed that defendant was armed and dangerous. However, we do not address the validity of the search since defendant cannot show that he has standing to object to the admission of the evidence. Defendant acknowledged that he did not own the house and had just been staying there a few days with his friends. This state has followed the case of *Rakas v. Illinois*, (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, in holding that a defendant has no constitutional right to challenge the search of another person's property when he has no legitimate expectation of privacy in the place searched. *Holt v. State*, (1979) 272 Ind. 183, 396 N.E.2d 887; *Johnson v. State*, (1979) 271 Ind. 145, 390 N.E.2d 1005; *Lee v. State*, (1981) Ind.App., 419 N.E.2d 825.

■ There is no evidence in this case that defendant had a key to his friend's house, had exclusive control over any portion of the house, had spent any significant amount of time there, or was considered other than a guest. He was not present in the house at the time of the search. There is no sufficient evidence here to show the necessary possessory interest for defendant to claim the protection of the Fourth Amendment, and there was no error in the trial court's denial of the motion to suppress.

## II.

■ Defendant next argues that he was denied his right to counsel of his own choice. A court-appointed attorney was assigned to defendant approximately a year and a half before defendant's trial was held in October of 1981. Apparently, defendant was not happy with this attorney and refused to cooperate with him at first. Defendant filed two motions to dismiss his attorney and a motion to proceed *pro se*. At least two hearings were held on defendant's motions to dismiss but they were denied. His motion to proceed *pro se* was held in abeyance and was subsequently withdrawn.

We first note that the law in Indiana is clear that an indigent does not have an absolute right to counsel of his own choosing. This is discretionary with the trial court and can be reviewed only for abuse of that discretion. *Duncan v. State*, (1980) Ind., 412 N.E.2d 770; *Shoulders v. State*, (1978) 267 Ind. 538, 372 N.E.2d 168; *State v. Irvin*, (1973) 259 Ind. 610, 291 N.E.2d 70.

■ However, the record shows in this case that the trial court held a pre-trial hearing approximately one week before the trial where defendant specifically stated that he wished to go ahead with his court-appointed attorney during the following exchange:

"Q. The Judge has now scheduled this hearing this afternoon, among other things, for the purpose of determining whether or not you want to serve as your own attorney, whether or not you want to have me removed and have other counsel appointed. Will you please tell Judge Conkright now what your decision is?

"A. Okay. Judge Conkright, I'd like to, to state at the present time I feel it's the best thing is to go ahead with Mr. Walsh and everything as attorney as, take care of my case. I don't really feel now that,

you know, it would be in my best interest to go ahead with the case, you know, try to handle it myself, so I would like to go ahead with Mr. Walsh and everything."

He also withdrew his motion to proceed *pro se* at that time. Since defendant specifically stated that he did want to proceed to trial with his court-appointed attorney, he has waived any error on this issue.

### III.

Defendant next contends that the trial court erred in refusing to dismiss the charges against him after he learned that the state destroyed a tape recording of an interview with a key witness. The tape contained a statement from Dereck Reason which was taken by the police about one week after the robbery occurred. As a result of this statement, an arrest warrant was issued for defendant. The tape was reduced to a typewritten statement before it was erased.

■ We have clearly settled this issue contrary to defendant's position. We explained in *Schutz v. State*, (1981) Ind., 413 N.E.2d 913, 916:

"There is only speculation about a possible loss because the actual tape cassettes were not retained. The possibility of an omission of some exculpatory evidence in a particular witness's statement must always be considered by defense counsel. We do not see that the retention of a typed transcript rather than the tape cassette itself significantly affects the possibility of an omission. The defense has ample opportunity to correct any such omission through independent investigations, depositions, and cross-examination. It is not the duty of the prosecution to bear the burden of assembling the defense counsel's evidence. *State v. Wright*, (1978) 267 Ind. 590, 372 N.E.2d 453."

In this case, as in *Schutz*, defendant had the complete transcript of the witness's statement and the witness was available for depositions and cross-examination. There was no prejudice to defendant in the destruction of the tape cassette and no violation of his due process rights.

### IV.

Defendant next alleges that the trial court erred in failing to conduct a hearing on his competency to stand trial. When defendant's attorney filed a suggestion of incompetency, the trial court appointed two disinterested physicians to examine defendant as provided by statute. The two reports were subsequently filed and showed that defendant was competent, but the reports are not part of the record on appeal. A week prior to trial, defendant's counsel requested a competency hearing in order to cross-examine the two psychiatrists. The court denied the motion stating that both reports showed that defendant was competent to stand trial and that defendant had had ample time prior to this pre-trial hearing to request a competency hearing as the reports had been filed five months earlier. The court also said that defendant was free to call the doctors as witnesses on the morning of the trial if he wished to have them available for cross-examination.

■■ It is well settled that a defendant does not have an absolute right to a competency hearing where the examining doctors have reported he is competent to stand trial. Our statute and due process considerations only require that a hearing take place where the evidence before the court raises a bona fide or reasonable doubt as to the defendant's sanity. *Adams v. State*, (1979) 270 Ind. 406, 386 N.E.2d 657; *Brown v. State*, (1976) 264 Ind. 484, 346 N.E.2d 559; *Cook v. State*, (1972) 258 Ind. 667, 284 N.E.2d 81. Since the only evidence before the court, in this case, showed that defendant was competent to stand trial, the court was justified in not holding a hearing.

### V.

Defendant next contends that it was reversible error for the court to permit an attorney to pass notes to a witness during the trial. One of the state's witnesses was defendant's accomplice, Kevin Stewart, who had been arrested for his part in the

offense but had not yet been tried. It appears that Stewart had remained in the car during the robbery and that his main contribution was holding a gun and looking out for cars that might be following them during the getaway. At the time of defendant's trial, Stewart was involved in plea negotiations with the state. He stated that he was not testifying as a result of any promises of leniency and that any further discussions on the plea agreement had been postponed until after defendant's trial.

However, on cross-examination, defendant attempted to attack Stewart's credibility by repeatedly questioning him about alleged promises of leniency. During portions of this cross-examination, Stewart's attorney was permitted to sit by his side in order to advise him during his testimony and was observed passing notes to him. Defendant objected to the attorney passing notes but admitted the witness was free to ask advice from his attorney while testifying. Stewart's attorney explained that she preferred to write notes rather than speak quietly because she was afraid the intercom would pick up anything that was spoken. The court found there was no difference between speaking quietly and writing notes, so he allowed the attorney to write notes to Stewart.

■ It is clear that cross-examination of witnesses, as well as the general conduct of the trial, is within the sound discretion of the trial court and will not be reversed unless there is an abuse of that discretion. *Chambers v. State*, (1979) 271 Ind. 357, 392 N.E.2d 1156; *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411. Here defendant made no attempt to find out the nature of the notes written to the witness and has not shown that he was harmed in any way even though this was an unusual procedure. We find no abuse of discretion here.

## VI.

Defendant further argues that the trial court erred in preventing him from asking certain questions during his cross-examination of a police officer. Defendant had questioned his accomplice, Stewart, to try to establish that Stewart was testifying in exchange for a plea bargain with the state. Stewart denied that he was testifying in exchange for any promises of leniency and that any pending plea negotiations did not affect the truth of his testimony. Later, during the cross-examination of a police officer, defendant attempted to elicit testimony to show that Stewart was aware of the serious nature of the charges against him and that this would therefore affect his testimony. Defendant's attorney asked the officer: "Did you advise him that a sentence on a Class A felony is non-suspendable?" The court sustained the state's objection to this question on the basis that it was irrelevant since the jury was not to be informed about any length of punishment or possible penalties.

■ We do not agree with defendant's allegation that the testimony was relevant to show the amount of pressure Stewart was under while he was testifying. The fact that a certain type of sentence is non-suspendable relates to the length of that sentence. This court has consistently held that since juries do not fulfill any function regarding sentencing, the amount of penalty prescribed by the legislature is irrelevant. *Garland v. State*, (1983) Ind., 444 N.E.2d 1180; *Debose v. State*, (1979) 270 Ind. 675, 389 N.E.2d 272. Here the jury was well aware of Stewart's involvement in the instant crime and that he was incarcerated pending the disposition of the charges against him. They had ample information with which to judge Stewart's credibility without any references to the length of any possible penalties.

## VII.

■ Defendant next contends that the trial court erroneously sustained an objection to one of the comments his attorney made during the final argument. The attorney was trying to impress upon the jury the seriousness of the case they were to decide and made the following statement:

"You will [be] asked to go back in the jury room possibly in an hour or less and make a decision in which in effect will decide whether or not my client spends the rests [sic] of his life behind those high gray stone walls...."

MR. GODFREY: "Your Honor, I object. This has been covered before."

THE COURT: "Show the uh, objection sustained."

This objection was properly sustained since it was a reference to a specific penalty. We have held that it is proper for defense counsel to argue in general terms about the seriousness of an offense without mentioning specific penalties. *Bailey v. State*, (1980) Ind., 412 N.E.2d 56. There was no error here.

## VIII.

■ Defendant finally contends that the trial court erred in admitting into evidence some of the state's exhibits showing his prior convictions during the habitual offender phase of his trial. At trial, defendant argued first that the documents from Delaware County concerning a 1973 guilty plea were not properly attested to or certified. At the close of the state's case, he argued that the documents were not sufficient to show a prior, valid conviction since they did not show on their face that he was represented by counsel at his guilty plea hearing. However, any possible error on this issue has been waived since the documents are not in the record. We have consistently held that error alleged but not disclosed by the record is not a proper subject for review. *Smith v. State*, (1982) Ind., 432 N.E.2d 1363; *Mendez v. State*, (1977) 267 Ind. 309, 370 N.E.2d 323.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.