James S. FRENCH, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–8610–CR–939.

Supreme Court of Indiana.

Dec. 16, 1987.

Wayne S. Trockman, Newman, Trockman, Lloyd, Flynn & Rheinlander, P.C., Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant for Attempted Rape, a Class A felony, for which he received a sentence of thirty (30) years and Confinement, a Class D felony, for which he received a sentence of two (2) years, the sentences to run concurrently.

The facts are: At approximately 10:30 p.m., on January 23, 1985, the victim arrived at the Dress Regional Airport in Evansville, Indiana, where she met her parents, nephew and sister. After the usual greetings, she left the terminal building and went to the rental car agency where she had a car reserved. Her nephew and sister, ages 8 and 6 respectively, accompanied her. Her parents remained in the terminal.

When the victim entered the rental car area, she first entered the wrong automobile. When she realized her error, she exited that automobile and proceeded to the correct one. On her way, she passed within five feet of appellant. The area was dimly lighted but the victim testified the light was sufficient for her to be able to observe the appearance of appellant. She stated as she passed their eyes met but she was not at all fearful of appellant at that moment as she felt she was in a safe area and presumed appellant had legitimate business there. As she entered the automobile, she placed her sister on the seat beside the driver and her nephew went around the car to enter from the other side.

Before the victim was completely in the automobile, she felt a hand over her mouth and on her throat. She turned to see the person and realized it was the man she had just seen on her way to the automobile. Because the door was open, the interior light from the automobile enabled the victim to have a good view of appellant. At this point, the victim screamed and appellant told her to be quiet because he had a knife and he would kill her children. When the victim continued to struggle, the appellant repeated his warning. The victim testified she never did see a knife.

As the victim continued to struggle with appellant, her nephew opened the door on the other side of the car and removed her sister. Both children fled toward the terminal to obtain aid. As the victim and appellant struggled, she told him she had a large sum of money in her purse and had some jewelry which he could have. However, he replied that he did not want her money or her jewelry; he wanted her. He then ran one hand under her skirt and placed it high on her thigh. During the struggle, the victim was able to kick appellant in the groin thus enabling her to exit the automobile. However, it was necessary for her to continue struggling briefly with appellant in order to escape.

As she fled toward the terminal, she saw her father running toward them. Appellant turned and fled the scene. Her father pursued appellant for a short distance but then returned to the terminal. Police were called and the victim gave them a detailed description of her assailant including the type of clothing he wore.

Approximately an hour and a half after the attack, Officer Jeff Johnson saw appellant inside a convenience store and thought that he matched the description of the attacker at the airport. Johnson approached appellant and questioned him but did not arrest him at that time. However, as appellant left the convenience store he ran a traffic sign and the officer stopped him for the violation. He then learned that appellant was driving while his license was suspended. The officer therefore took appellant into custody.

He then decided because of a similarity of appellant to the description given of the attacker he would take him to the airport for possible identification by Albert Warren, a security officer on duty at the time, who had viewed the attacker as he fled the scene. Warren stated he could not make a positive identification of appellant, but he was the same size and build as the assailant and his clothing appeared to be the same.

Appellant was then taken to the police station where he was photographed and six photographs of him were taken by the police to the victim and her father for identification.

Appellant claims his out-of-court identification by Warren was unduly suggestive, prejudicial and in violation of his constitutional rights. Appellant claims the one-on-one confrontation with the security officer was in violation of the admonition of this Court to law enforcement agencies to "attempt to minimize the suggestive inferences" which arise from such confrontations, citing *Wright v. State* (1972), 259 Ind. 197, 285 N.E.2d 650. However, in the case at bar as in the *Wright* case, we do not perceive the on-site viewing by the witness to be unduly suggestive.

■ Appellant had been arrested within an hour and a half of the occurrence. At the time, Warren frankly stated that he could not identify appellant by his face but he did state the opinion that appellant was the attacker based upon his profile, his general build and the clothing he was wearing. All of this was a matter which was submitted to the jury for their evaluation. When we look at the frank manner in which Warren testified and the manner in which the confrontation was accomplished, we do not perceive that it created a substantial likelihood of irreparable misidentification. *Gillie v. State* (1984), Ind., 465 N.E.2d 1380.

Appellant makes a point that Warren had stated that he was wearing a brown jacket when in fact his jacket was maroon. However, this was thoroughly explained by Warren in that the airport parking lot lights are amber colored and have a tendency to change the appearance of various colors. He readily admitted that appellant's jacket was actually maroon but pointed out that under the amber lights it appeared brown. This was an explanation which the jury could accept as reasonable.

Appellant claims the in-court identification of him by Warren was improperly influenced by the one-on-one on-site confrontation and was not supported by an independent basis. Under the circumstances above set out, we see no error in allowing the in-court identification of appellant. *Wilson v. State* (1981), 275 Ind. 586, 418 N.E.2d 1150.

When we view the direct examination and cross-examination of Warren, it becomes apparent the jury was fully apprised of Warren's limited view of appellant at the scene and the facts upon which he based his identification. We must presume the jury took these matters into consideration in evaluating the in-court identification of appellant.

■ Appellant claims the identification made by the father of the victim was the product of a tainted, unduly suggestive out-of-court identification. He bases his allegation upon the fact that police officers, with the consent of the prosecuting attorney, took six photographs, all of appellant, to the victim and her father for identification. Appellant cites *Haun v. State* (1983), Ind., 451 N.E.2d 1072 for the proposition that a single photograph should not be shown to a witness for identification purposes. He argues that six photographs of the same person are no better than one photograph, and we agree with that observation. We point out that the trial judge also agreed with that observation and suppressed the evidence of such identification as being violative of appellant's constitutional right to due process.

This Court has held that an in-court identification by a witness who has participated in an impermissibly suggestive out-of-court identification is admissible if the witness has an independent basis for the in-court identification. *Henson v. State* (1984), Ind., 467 N.E.2d 750.

In the case at bar, the victim's father responded to calls for help and closely pursued appellant as he fled the scene. In so pursuing him, the victim's father was able to approximate the assailant's height and weight and the manner of dress. He, like security officer Warren, purported to identify appellant as the assailant based upon such observation. Given this situation, thoroughly brought out by direct and cross-examination, it was proper to submit the evidence to the jury to be weighed with the other evidence in the case.

We would point out that the father's testimony differed from Warren's testimony, in that the father was able to observe appellant's face at a distance of approximately twenty feet before he abandoned the chase because he had run into some posts and steel cable. The trial court did not err in holding that there was an independent basis for the in-court identification of appellant.

Appellant makes the same complaint of the in-court identification by the victim. She also had been subjected to the improper photographic array. Appellant claims that the victim's description of her attacker was "very vague." Because of the allegation of vagueness of the victim's identification and allegations of her being confused during her testimony concerning the lighting available, the clothing of appellant and appellant's facial features, we have read the entire testimony of the victim, both direct examination and cross-examination. It is obvious from this transcript that the victim was a very intelligent woman with a remarkable amount of poise.

Her direct examination was frank and lucid. As in all cases of this sort, there were small discrepancies between details contained in the police report, early statements made by the victim and her in-court statements. She very candidly admitted these differences and made very plausible explanations of each matter raised. The victim showed remarkable poise in responding to insistent and lengthy detailed cross-examination dwelling particularly upon her identification of appellant. Throughout the entire period, from her first report to the police to her final testimony on the witness stand, she remained remarkably constant in her insistence that although the light was dim in the parking lot it was sufficient for her to see appellant clearly. During his attack, her view was aided by the interior light from the car as well as the fact that appellant's face was no more than a foot from hers as she observed him.

It is abundantly clear from this testimony that the trial judge was justified in his ruling that there was an independent basis for the victim's testimony not unduly tainted by the improper photographic array. By the same token, her testimony standing alone, not considering the identification testimony by other witnesses, was sufficient to support the verdict of the jury. The fact that there were minor discrepancies and minor inconsistencies concerning which the appellant was cross-examined in detail does not make her testimony inadmissible. Those facts are correctly submitted to the jury for its weight and determination. *Henson, supra.*

Appellant claims his conviction for Attempted Rape, a Class A felony, is not supported by the evidence in that there was no evidence showing that a weapon was in his possession or under his control. He claims the trial court erred in instructing the jury as to Attempted Rape, a Class A felony. Appellant claims that Ind.Code § 35–42–4–1 requires that there be proof that appellant had a deadly weapon in his possession at the time of the attack. The statute reads in part as follows:

"A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:
(1) the other person is compelled by force or imminent threat of force;
(2) the other person is unaware that the sexual intercourse is occurring; or
(3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given;
commits rape, a Class B felony. However, the offense is a Class A felony if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if

it results in serious bodily injury to any person other than a defendant."

The statute does not require the victim to see the weapon. Appellant acknowledges that cases decided before 1983 hold that the weapon need not be actually seen to support the conviction. However, he states that the statute was amended in 1983, that prior to that time the statute had read that the offense was a Class A felony "if it is committed by using or threatening the use of deadly force, or while armed with a deadly weapon." He claims the present language of the statute makes it imperative that proof positive be shown that the weapon actually was possessed by the assailant at the time of the offense. Appellant is mistaken in his observations. We cannot read the present statute to show legislative intent that a victim of an assault must jeopardize her life to ascertain the truth of the assailant's statement that he is armed.

■ As Chief Justice Shepard stated in *Coleman v. State* (1986), Ind., 490 N.E.2d 325, "a weapon need not be displayed in order to establish the threat of deadly force." *Id.* at 327. We further observe that when an assailant informs his victim that he is armed the victim is entitled to respond accordingly without insisting upon proof of the armament. We would further observe that this Court will accept the word of the assailant that he is armed and adjudicate accordingly. In the case at bar, appellant told the victim two different times that he was armed with a knife and that he would kill her children. Such conduct on his part is sufficient to support the finding of the jury that he threatened the use of a deadly weapon.

Appellant also argues the trial court erred in giving its Instruction No. 12 and failing to give his Tendered Instruction No. 1. Both instructions cover the subject matter of Attempted Rape, a Class A felony. Appellant objected to the court's instruction on the ground that there was no proof that he was armed with a deadly weapon. As we noted above, we take the position the evidence was sufficient for such charge. As a matter of fact, we perceive no great difference between the two instructions. The court's Instruction No. 12 was proper. Appellant's Tendered Instruction No. 1 could have been given without any great damage.

■ It is not error for the trial court to refuse to give a tendered instruction where the substance of the instruction was adequately covered by an instruction which was given. *Bowling v. State* (1986), Ind., 493 N.E.2d 783. The trial court is not obliged to read a certain instruction merely because it is a correct statement of the law. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228. We see no reversible error in the giving of the court's Instruction No. 12 nor in the refusing of appellant's Tendered Instruction No. 1.

■ Appellant claims the sentence imposed by the trial court is manifestly unreasonable in light of the facts surrounding this incident. The thirty (30) year sentence imposed by the trial judge is the presumptive sentence provided in Ind.Code § 35-50-2-4. The statute reads as follows: "A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars ($10,-000)."

Appellant claims that given the surrounding circumstances, no rape was committed, no touching of any private areas of the victim occurred, no weapon was used and no physical harm occurred to anyone, he should not have been given the presumptive sentence. He further points out that he had no prior felony record. The State correctly points out that appellant did accost the victim while she was accompanied by two small children and that he did threaten to kill the children unless she cooperated.

■ This Court has previously held that when a trial court imposes the presumptive sentence we will presume the proper mitigating and aggravating factors in deter-

mining that sentence. *Wilson v. State* (1984), Ind., 465 N.E.2d 717. This Court is not at liberty to set aside a sentence merely because it may seem severe. *Jones v. State* (1981), Ind., 422 N.E.2d 1197. Considering this record in its entirety, we see nothing manifestly unreasonable in the imposition of the presumptive sentence.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.