Keith Gerard WHEELER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45S00–0006–CR–377.

Supreme Court of Indiana.

June 20, 2001.

Jeff Schlesinger, Crown Point, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

Keith Gerard Wheeler was convicted of murder and criminal confinement and sentenced to sixty-five years imprisonment. In this direct appeal, he contends that: (1) the trial court erred in failing to hold a hearing to determine his competency prior to trial; (2) the trial court abused its discretion in admitting a "mug shot" of Wheeler; (3) the trial court abused its discretion in admitting autopsy photos of the victim's severed body; and (4) there was insufficient evidence to support Wheeler's conviction for confinement. We affirm the judgment of the trial court.

### Factual and Procedural Background

On the evening of July 24, 1998, Wheeler met Iola Merriweather on the street and invited her to his home to smoke crack cocaine. Merriweather and Wheeler smoked and listened to music for several hours in Wheeler's basement. Wheeler's friend "Pierre," and his three children were upstairs. At some point, Elaine Curatolo and a man arrived at Wheeler's house to purchase crack. While Wheeler and Pierre packaged the man's drugs, Merriweather and Curatolo smoked more crack. Curatolo and the man then left the house.

Later that evening, Curatolo returned to Wheeler's home, picked up Merriweather, and drove aimlessly while smoking more crack. When the two returned to Wheeler's home to purchase yet more crack, Wheeler and Pierre were waiting outside and Wheeler accused the pair of stealing drugs from him. Wheeler ordered Merriweather and Curatolo into the house, locked the doors, and stated that "somebody is going to die." Pierre grabbed a pot and directed Merriweather to kill Curatolo with it. Merriweather hit Curatolo with the pot and dropped it to the floor. Wheeler then picked up the pot, hit Curatolo with it until she fell to the floor, and

continued striking Curatolo with the pot and his fists. Curatolo retaliated by grabbing the pot and hitting Wheeler in the face. Wheeler began choking Curatolo, then dropped his stereo on her head, and repeatedly slammed a television set into her. A witness later saw Wheeler and Pierre carrying Curatolo's body into Wheeler's car.

During the beating, Wheeler told Merriweather that she could leave, but Pierre stopped her, ordered her to remove her clothes, and engaged in a full body cavity search in an attempt to locate the missing drugs. Wheeler then ordered Pierre to take Merriweather downstairs, which he did. When Pierre returned upstairs, Merriweather fled from the house naked and went to a neighbor's home where she found clothing and someone to call the police.

The police arrived, spoke with Merriweather, and drove to Wheeler's home where they found blood on the sidewalk and front steps. The police pounded on the door, and when no one answered they entered and found blood on the walls, floors, blinds, and carpeting. Later that evening, Wheeler returned to his home with injuries to his face and hands and was arrested.

The next morning a conductor on a Norfolk Southern train heading to Chicago spotted Curatolo's body on the tracks. Although he applied the brake, by the time the train came to a halt the body had been severed at the waist. An autopsy was performed and a pathologist determined that Curatolo had died from blunt force trauma, but was unable to determine whether she was alive when the train severed her body. The police found automobile tire tracks near the train tracks, a cigarette butt that had DNA on it consistent with Wheeler's, Curatolo's blood scattered at the scene, and blood in Wheeler's car that was consistent with Curatolo's.

Wheeler claimed that although he hit Curatolo, another man killed her. At a jury trial, Wheeler was found guilty of murder and criminal confinement and sentenced to sixty-five years imprisonment.

## I. Competency

■ Wheeler claims that the trial court abused its discretion by not holding a competency hearing. Before trial, Wheeler filed a motion to proceed pro se. The trial court granted this motion, but then ordered an examination to determine whether Wheeler was competent to conduct his own defense. The first two doctors who examined Wheeler had differing opinions on his competency. Neither opinion is included in the record. The trial court ordered a third examination. Before the examination, Wheeler withdrew his request to proceed pro se. The trial court granted that request, but allowed the third doctor to examine Wheeler. That doctor determined that Wheeler "could easily assist his counsel in his defense [and that] [t]here was no evidence here of incapacity." The trial court then proceeded to trial without holding a hearing on Wheeler's competency.

■ Indiana Code section 35–36–3–1(a) requires the trial court to conduct a hearing on competency if "the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense." It is well settled that a defendant does not have an absolute right to a competency hearing where the examining doctors have reported that he is competent to stand trial. *Clifford v. State*, 457 N.E.2d 536, 540 (Ind.1984). Our statute and due process considerations require that a hearing take place only if the evidence before the court raises a reasonable doubt as to the defendant's competency.

*Id.* Here, Wheeler himself did not file a motion to challenge competency and there were written findings by a doctor that Wheeler was competent. We cannot say that the trial court erred in concluding that there was no reasonable doubt as to competency and in failing to hold a hearing on competency. *Woods v. State,* 547 N.E.2d 772, 788 (Ind.1989) (holding that no hearing was required where there were written reports supporting defendant's competency), *abrogated on other grounds by Richardson v. State,* 717 N.E.2d 32, 49 n. 36 (Ind.1999).

## II. Mug Shots

Wheeler also claims that the trial court abused its discretion by admitting "mug shot" photographs of him. At trial the State introduced several photographs of Wheeler that were taken when he was arrested for the current crime. Wheeler claims that admission of these photographs violated Indiana Rule of Evidence 403.

■ We review the admission of photographic evidence for an abuse of discretion. *Humphrey v. State,* 680 N.E.2d 836, 842 (Ind.1997). Rule 403 prohibits the admission of photographic evidence if the probative value of the photograph is substantially outweighed by the danger of unfair prejudice. *Powell v. State,* 714 N.E.2d 624, 629 (Ind.1999).[1]

■ The photographs have probative value. They show the head wound Wheeler sustained while he was attacking Curatolo. This corroborates Merriweather's testimony describing the murder. Contrary to Wheeler's contention, this evidence does "make it more or less likely that the defendant committed the crime in question." *See Underwood v. State,* 535 N.E.2d 507, 517 (Ind.1989) (photographs that corroborate a witness' testimony are relevant).

■ Nor are the photographs unfairly prejudicial. The typical objection to mug shots is to photographs taken in conjunction with a prior arrest. The usual objection is based on the danger that jurors may infer a criminal history from the pictures. These photographs were taken at the time of Wheeler's arrest on the current charges and are clearly marked with the arrest date, July 25, 1998. When the photographs were introduced into evidence, the detective noted that they were taken on the morning of Wheeler's arrest. These photographs were placed into evidence by the State to support its contention that Wheeler sustained a head injury while killing Curatolo. As in *Coleman v. State,* "[a] jury naturally would presume that appellant was arrested on the instant charge." 546 N.E.2d 827, 831 (Ind.1989) (allowing admission of mug shot from current case). Because the probative value of the photographs was not substantially outweighed by a danger of unfair prejudice, the trial court did not abuse its discretion in admitting the mug shots.

## III. Autopsy Photographs

During its case in chief, the State offered six autopsy photographs of Curatolo. Wheeler objected to one of the photo-

---

1. Both the State and Wheeler cite *Splunge v. State* as the test governing admission of mug shots. *See* 641 N.E.2d 628, 632 (Ind.1994) ("Mug shots ... will be allowed if (1) they are not unduly prejudicial and (2) they have substantial independent probative value.") (citations omitted). Although this test is similar to Indiana Rule of Evidence 403, the formulation was derived from cases decided before the adoption of the Indiana Rules of Evidence. The rules themselves set forth the current formulation to the extent they address an issue specifically.

graphs, State's Exhibit 92.[2] Wheeler contends that the admission of this photograph violated Indiana Rule of Evidence 403.

This issue also turns on the balance of probative value versus prejudice which we review for an abuse of discretion. *Humphrey v. State*, 680 N.E.2d 836, 842 (Ind.1997). "Although a photograph may arouse the passions of the jurors, it is admissible unless 'its probative value is substantially outweighed by the danger of unfair prejudice.'" *Cutter v. State*, 725 N.E.2d 401, 406 (Ind.2000) (quoting Ind. Evidence Rule 403). "Even gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally." *Byers v. State*, 709 N.E.2d 1024, 1028 (Ind.1999) (citations omitted).

State's Exhibit 92 showed Curatolo's body after being beaten and hit by a train. It assisted the jurors in understanding the pathologist's description of Curatolo's injuries and the probable cause of death. *See Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind.1996). Furthermore, in a case such as this where the pathologist is uncertain exactly what caused the victim's death, this Court has previously ruled that admitting photographs of a dismembered corpse was not an abuse of discretion. *See Komyatti v. State*, 490 N.E.2d 279, 287 (Ind.1986). Wheeler argues that it is time for this Court to "draw a line" to determine when autopsy photographs are too prejudicial and to give meaning to Rule 403. Although we agree with Wheeler that there are cases in which a distorted and disturbing photograph may be too prejudicial to be admitted, this is not one of them. The trial court did not abuse its discretion in admitting State's Exhibit 92.

## IV. Sufficiency of the Evidence

Finally, Wheeler claims that there is insufficient evidence to support his conviction for the criminal confinement of Merriweather. Our standard for reviewing a claim of sufficiency of the evidence is well settled. We do not reweigh the evidence or judge the credibility of witnesses. *Spurlock v. State*, 675 N.E.2d 312, 314 (Ind.1996). We look to the evidence and the reasonable inferences therefrom that support the verdict and will affirm a conviction if evidence of probative value exists from which a jury or judge could find the defendant guilty beyond a reasonable doubt. *Id.*

In this case, there is sufficient evidence to support Wheeler's conviction for criminal confinement. The crime of criminal confinement requires that the State prove that Wheeler: (1) knowingly or intentionally (2) confined another person (3) without her consent. Ind.Code § 35–42–3–3 (1998). The jury was instructed on accomplice liability and, therefore, could have

---

2. At the start of the discussion on the admission of the photographs, Wheeler expressed objection to "the photographs." After discussing each photograph in detail, Wheeler amended his objection: "Your Honor, I'm not objecting and saying that none of those photographs should come in. My main concern is with this ninety-two. I mean, if these other photographs are, if they illustrate these injuries as the state states, then I really don't see any purpose in this first photograph."

Wheeler's objections on the other photographs are therefore waived. *Cutter v. State*, 725 N.E.2d 401, 406 (Ind.2000) ("Failure to object to the admission of evidence at trial normally results in waiver...."). In any event, the State noted that Exhibit 92 was "the most graphic of the set." For the reasons discussed above, the trial court did not abuse its discretion in admitting the other photographs of Curatolo's body.

found Wheeler responsible for the actions of his accomplice.

At trial, Merriweather testified that Wheeler and Pierre ordered Curatolo and her into the house. Wheeler admitted that he locked the doors and prevented anyone from leaving the house. This evidence supports his conviction for criminal confinement of Merriweather. Wheeler points to the fact that he told Merriweather to leave after the initial confinement and that Pierre forced her to stay and consent to a cavity search as evidence that he did not confine Merriweather. However, Wheeler is responsible for the actions of his accomplice and assisted in them when he ordered Pierre to take Merriweather downstairs. This is also sufficient evidence to support Wheeler's conviction for the criminal confinement of Merriweather.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.