

FILED

Jun 30 2016, 7:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amanda O. Blackketter
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Robinson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 30, 2016<br><br>Court of Appeals Cause No.<br>73A01-1506-CR-750<br><br>Appeal from the Shelby Superior Court<br><br>The Honorable David N. Riggins, Judge<br><br>Trial Court Cause No.<br>73D02-1503-F6-64 |

**Barnes, Judge.**

## Case Summary

[1]     Charles Robinson appeals his conviction for Level 5 felony corrupt business influence. We reverse and remand.

# Issues

The issues we address today are:

   I.    whether the trial court properly denied Robinson's severance motion; and

   II.   whether there is sufficient evidence to support Robinson's conviction.[1]

# Facts

The evidence most favorable to the conviction is that, on January 25, 2015, Robinson went to a Walmart in Shelbyville with his fiancée, Deborah Hill. While in the store, Robinson went to the electronics department of the store without Hill, after telling her that he was going to the restroom. Robinson then placed a $299 home security system camera into his shopping cart without hesitation or apparently considering the price. Robinson then went into the men's apparel department and exited that section shortly thereafter without the camera in his cart. Robinson then met back up with Hill, who handed him a backpack she had brought into the store with her, and the two left the store.

A Walmart employee later found the camera box, opened and missing some parts, in the men's apparel department. Darren Koors, an asset protection

---

[1] Because we reverse Robinson's conviction for corrupt business influence, reinstate his two theft convictions, and remand for resentencing, we need not address his argument that his sentence for corrupt business influence was inappropriate.

associate for Walmart, came to the store later that day on a personal errand and was told of the opened camera box that was found. Koors told the employee to place the box in a fitting room and that he would look into the matter on his next working day, which was January 27, 2015. On that date, Koors discovered that his manager had moved the camera box to an office. Koors then reviewed security video footage from January 25 and observed a man, whose identity he did not know at that time, remove the camera box from the shelf, go into the men's apparel department, then leave that department without the camera box. This man was the only person on January 25 who went into the electronics department and selected that particular item. After reviewing the footage, Koors determined that the camera box must have been in the men's apparel department for approximately two hours before being discovered by the Walmart employee.

[5] On February 17, 2015, Robinson and Hill returned to the Shelbyville Walmart. Robinson again separated from Hill, after telling her he was going to the restroom, went to the electronics department, again selected the same home security camera system from the shelf, and put it into his cart. Koors was working that day and saw Robinson in the toy department with the camera box in his cart; Koors recognized Robinson from the security footage of the January 25, 2015 incident. Koors observed Robinson opening the box. Robinson noticed Koors watching him, as the two made eye contact. Koors called police and continued watching Robinson, who abandoned the cart with the box in it in the toy department.

[6] When Shelbyville Police Officer Shawn Bennett arrived at the Walmart, he and Koors apprehended Robinson and Hill and brought them to an office at the store for an interview. Koors showed Robinson a picture from the January 25, 2015 security footage, and Robinson admitted that he was in the picture. Officer Bennett searched both Robinson and Hill, and neither had any stolen items in their possession. Robinson did have a pocket knife. He also told Officer Bennett that he had put the camera back that day because he was aware Koors was "on to him." Tr. p. 186. Robinson denied ever stealing anything from Walmart, however. The camera box eventually was located hidden in the toy department and the security wire that surrounded the box had been cut with a sharp object. No items were missing from the box but the product could not be resold because of the damage to the box.

[7] The State charged Robinson with two counts of Class A misdemeanor theft and two counts of Level 6 felony theft; the enhanced theft charges were based on Robinson's prior theft convictions.[2] The State also charged Robinson with one count of Level 5 felony corrupt business influence. Robinson moved to sever trial of the theft charges from each other; the motion was unclear as to how Robinson believed the corrupt business influence charged should be tried. The trial court denied the severance motion. After a jury trial, Robinson was found guilty of the misdemeanor thefts and of corrupt business influence. Robinson

---

[2] Although Robinson apparently was not successful in removing any property from Walmart during this second incident, the theft charge was related to the fact that Walmart could not resell the camera because of the damage caused to the box; Robinson was not charged with attempted theft.

then stipulated to his prior theft convictions. The trial court merged all four theft charges into the corrupt business influence charge and only entered judgment of conviction on and sentenced Robinson for that charge. Robinson now appeals.

# Analysis

## *I. Severance*

We first address Robinson's contention that the trial court should have severed the theft charges. Indiana Code Section 35-34-1-9(a) provides:

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
> (1)     are of the same or similar character, even if not part of a single scheme or plan; or
>
> (2)     are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Indiana Code Section 35-34-1-11(a) governs severance of charges and states:

> Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1)     the number of offenses charged;

(2)     the complexity of the evidence to be offered; and

(3)     whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

[9]     If offenses have been joined solely because they are of the same or similar character, a defendant is entitled to severance as a matter of right, and a trial court has no discretion to deny a severance motion. *Pierce v. State*, 29 N.E.3d 1258, 1264 (Ind. 2015). If, however, offenses have been joined because the defendant's underlying acts are connected together, we review a trial court's ruling on a severance motion for an abuse of discretion. *Id.* In other words, a defendant is not entitled to severance as of right if multiple criminal acts fall under Indiana Code Section 35-34-1-9(a)(2). If the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements, such as that multiple crimes have been committed with a common victim, modus operandi, and motive, a defendant is not entitled to severance of charges as of right. *Id.* at 1266. When reviewing discretionary denial of a motion to sever, we must consider whether severance was required in order to promote a fair determination of the defendant's guilt or innocence after reviewing subsections 1-3 of Indiana Code Section 35-34-1-11(a). *Ben-Yisrayl v. State*, 690 N.E.2d 1141, 1145 (Ind. 1997), *cert. denied*. We will reverse denial of a discretionary severance motion only for clear error. *Id.* at 1146.

[10] We conclude the record establishes that Robinson was not entitled to severance of the charges as a matter of right, but rather that the charged offenses were "connected together or constituting parts of a single scheme or plan." *See* I.C. § 35-34-1-9(a)(2). On two separate occasions less than a month apart, Robinson went to the same Walmart in Shelbyville and stole or attempted to steal parts from a home security camera system box, after opening the box within the store. These two thefts had a common victim, modus operandi, and motive. Additionally, proof regarding both thefts was necessary in order for the State to establish the corrupt business influence charge; it would have been impossible to prove that charge without evidence related to both thefts. Thus, Robinson was not entitled to severance as a matter of right, and denial of that motion was within the trial court's discretion.

[11] We find no abuse of that discretion here. Neither the number of offenses charged nor the complexity of the evidence weigh in favor of severance. Only three charges were tried to the jury: the two separate theft incidents and the corrupt business influence charge that was predicated on the two thefts. The evidence presented in support of the charges was straightforward and inextricably intertwined. Only three witnesses testified for the State, with most of that testimony provided by Koors. In light of the uncomplicated nature of the evidence, we do not believe there was a significant risk of juror confusion or any doubt that the jurors would be able to distinguish the evidence and apply the law intelligently to each offense. As such, we conclude the trial court did not abuse its discretion in denying Robinson's severance motion.

## II. Sufficiency of the Evidence

[12] We now turn our attention to whether there was sufficient evidence to support Robinson's corrupt business influence conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess the credibility of witnesses. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We will affirm a conviction if there is probative evidence and reasonable inferences drawn therefrom from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *Id.* If there is proof lacking on an element of a crime after considering all the evidence in favor of the conviction, we will reverse. *Brown v. State*, 868 N.E.2d 464, 470 (Ind. 2007).

[13] The State charged and convicted Robinson under the following provision of Indiana's Racketeer Influenced and Corrupt Organizations ("RICO") Act: "A person . . . who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise . . . commits corrupt business influence, a Level 5 felony." I.C. § 35-45-6-2(2). A "pattern of racketeering activity" is defined as "engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents." I.C. § 35-45-6-1(d). Additionally, at least two incidents must occur within five years of each other. *Id.* "Racketeering activity" includes committing, attempting to commit, conspiring to commit, or

aiding and abetting in the commission of theft, among other crimes. I.C. § 35-45-6-1(e)(14).

[14] Robinson first challenges the sufficiency of the evidence that he committed theft related to the January 25, 2015 incident, as a necessary predicate to his corrupt business influence conviction. A theft conviction requires proof that the defendant knowingly or intentionally exerted unauthorized control over another person's property, with intent to deprive the other person of any part of its value or use. I.C. § 35-43-4-2(a). Robinson contends that because the camera box was abandoned for at least two hours before a Walmart associate found it, and because the box was moved from a fitting room to an office before Koors began his investigation, there were opportunities for someone besides Robinson to have opened the box and removed some of its contents.

[15] Robinson's argument is a request to reweigh the evidence, which we must decline. Koors testified that Robinson was the only customer on January 25 to enter the electronics department and to select that particular home security camera system from the shelf. Koors also testified that Robinson's selection of the item without apparently inspecting it or considering its price was consistent with shoplifting. Robinson then went into the men's apparel section with the box and left without it. When the Walmart associate found the box, it had been opened and some of its contents removed. This evidence is sufficient to support the conclusion that Robinson opened the box and removed some of its contents, so as to support a finding that he committed theft.

[16] We now turn to the question of whether Robinson's commission of theft on two separate dates is sufficient to support his corrupt business influence conviction. In his brief, Robinson argued that the State failed to prove there was any threat of continued criminal activity in the future. He relied upon two cases from this court in which, citing federal precedent under the federal RICO Act, we held that in order to establish a "pattern of racketeering activity," the State must prove that a defendant's criminal acts pose a threat of continued criminal activity. *See Waldon v. State*, 829 N.E.2d 168, 177 (Ind. Ct. App. 2005), *trans. denied*; *Kollar v. State*, 556 N.E.2d 936, 940-41 (Ind. Ct. App. 1990), *trans. denied*.

[17] After this case was fully briefed, our supreme court decided *Jackson v. State*, No. 48S02-1509-CR-554 (Ind. Mar. 2, 2016), in which it expressly overruled both *Waldon* and *Kollar*. The court noted that there are differences between the federal and Indiana RICO Acts, and that under the Indiana statute "the State is not required to prove that racketeering predicates amount to or pose a threat of continued criminal activity." *Jackson*, slip op. at 5. The court also noted, however, that the plain language of the Indiana RICO Act requires proof that two or more predicate criminal acts were "not isolated," and thus "continuity" remains a relevant consideration. *Id.*

[18] The court further explained:

> In other words, the statute does not apply to sporadic or disconnected criminal acts. Thus, although failure to prove continuity is not necessarily fatal to a corrupt business influence conviction—since it is not a separate element in the statute—the State must still demonstrate that the criminal incidents were in

fact a "pattern" and not merely "isolated" incidents. And evidence of a degree of continuity or threat of continuity is certainly helpful in establishing the necessary "pattern."

In some cases, proving that two or more criminal incidents are not isolated will be straightforward, as the very nature of the crimes will suggest that they are not sporadic. In others, the proof may be more elusive, perhaps indicating that the State is overreaching in its attempt to obtain a conviction under the Indiana RICO Act. Ultimately, we are aware that we have not given a precise formulation on what proof will suffice, but we believe that future case law will shape and bring clarity to the concept of "not isolated."

*Id.* at 10-11.

[19] Today, we begin the process of writing that case law attempting to bring "clarity to the concept of 'not isolated.'" In so doing, we conclude that the State overreached in charging Robinson of a RICO violation.

[20] We begin by noting what *Jackson* did *not* hold; namely, that a defendant's commission of at least two enumerated predicate crimes can always support a conviction for corrupt business influence under Indiana's RICO, even crimes that have a similar modus operandi and victim. Indeed, our supreme court previously has held:

any danger that a racketeering conviction could result merely from the commission of two predicate offenses within a five-year period is obviated not only by the interrelatedness requirement . . ., but also by the requirement . . . that once a pattern of racketeering activity has been established, it must be connected to

an interest in or control of . . . property or an enterprise, to
constitute the offense of corrupt business influence.

*Flinn v. State*, 563 N.E.2d 536, 541 (Ind. 1990).[3] *Flinn* is further support for the
notion that two predicate offenses do not necessarily add up to a RICO
conviction.

[21] The particular facts of *Jackson* provide a clear contrast to the present case. In
*Jackson*, the defendant was the mastermind of three armed robberies committed
within a one-month time span. In each case, the defendant recruited at least
two other persons to actually carry out the robberies while he waited in a car
down the street, and he would meet his accomplices later to split the proceeds
of the robbery. On at least two occasions, the defendant lent a gun to one of his
accomplices. For the third and final robbery, the defendant's plan and target
had become riskier and more sophisticated: he targeted a bank instead of a
liquor store as in the previous two robberies, and he called in a bomb threat to a
local school in order to distract law enforcement. Our supreme court held the
fact finder could have inferred from the evidence of the nature of the crimes that
they were not isolated or sporadic. *Id.* at 12.

[22] Here, Robinson twice shoplifted or attempted to shoplift similar items from the
same Walmart store. Beyond that, there is no evidence of any kind of ongoing

---

[3] At the time *Flinn* was decided, the Indiana RICO Act required a pattern of racketeering activity to be
connected to an interest in or control of "real" property or an enterprise. In 1991, the legislature deleted the
"real" property requirement from RICO. *See* P.L. 211-1991, § 9.

criminal enterprise. There is no evidence of Robinson having acquired any property through "racketeering activity" other than the items he stole or attempted to steal from Walmart. There is no evidence of extensive planning or increasing sophistication of Robinson's crimes. There is no evidence he enlisted any accomplices to work with him; the record does not contain any evidence that Hall was aware of Robinson's criminal actions, and she denied having any knowledge of them. Robinson was not any kind of criminal mastermind, nor did he work for one. The crimes were isolated and sporadic.

[23]  We simply do not believe the commission of two acts of shoplifting of this type is the kind of activity our legislature meant to be covered by our RICO statute. We have previously observed that our RICO statute "was designed to address the more sinister forms of corruption and criminal activity . . . . RICO is structured to reach and punish these diabolical operations that are a greater threat to society than random theft." *AGS Capital Corp. v. Prod. Action Int'l, LLC*, 884 N.E.2d 294, 308 (Ind. Ct. App. 2008), *trans. denied*. Additionally, we have described the intent behind RICO laws as permitting cumulative punishment and to "'seek eradication of organized crime . . . by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.'" *Chavez v. State*, 722 N.E.2d 885, 894 (Ind. Ct. App. 2000) (quoting *Dellenbach v. State*, 508 N.E.2d 1309, 1315 (Ind. Ct. App. 1987) (in turn quoting Organized Control Act of 1970,

Pub.L. No. 91–452, 84 Stat. 923 (1970))).[4] RICO laws were designed "'to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots.'" *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 n.9 (7th Cir. 1995) (quoting *Russello v. United States*, 464 U.S. 16, 26, 104 S. Ct. 296, 302 (1983)), *cert. denied*.[5]

[24] Robinson, while no saint, does not fit the definition of someone involved with any kind of organized crime. He is no Lucky Luciano. He is not even an Ashonta Jackson, who organized others in the commission of escalating armed robberies. *See Jackson*, slip op. at 12. The RICO statute in its Indiana form is a powerful tool that assuredly has its value and utility, and it is a vital arrow in law enforcement's quiver. Here, the State is off-target both legally and practically by attempting to elevate a two-time shoplifter to the status of a Carlo Gambino. We decline, pursuant to *Jackson*'s guidance, to apply RICO here. There are other means of prosecuting and penalizing repeat offenders such as Robinson, such as through habitual offender or enhanced charges for certain

---

[4] *Chavez* addressed and rejected a claim that it violated double jeopardy prohibitions to convict a defendant for both a RICO violation and the predicate offenses. *Chavez*, 722 N.E.2d at 894-95. We have no quarrel with *Chavez*'s holding on the facts of that case, but note that serious double jeopardy concerns easily could arise if there is no evidence of a "corrupt business influence" beyond the mere fact that a defendant committed two predicate offenses. Indeed, the trial court here evidently believed such concerns existed, as it merged the theft convictions with the corrupt business influence conviction.

[5] Although, as noted in *Jackson*, there are differences between the federal and Indiana RICO statutes, and there is no legislative history in Indiana, we still believe reference to federal law is helpful in gaining a general common sense understanding of the intent behind RICO laws.

offenses, including theft. But not every repeat offender falls under the RICO statute.

[25] There is insufficient evidence to support Robinson's conviction for corrupt business influence. There is, however, sufficient evidence to support convictions for two counts of Level 6 felony theft. We reverse Robinson's corrupt business influence conviction. We remand for the trial court to enter judgments of conviction for two counts of Level 6 felony theft of which Robinson was found guilty and to impose sentence on those counts. *See Ball v. State*, 945 N.E.2d 252, 258 (Ind. Ct. App. 2011) (remanding for imposition of judgment on lesser-included offense after finding insufficient evidence for greater offense), *trans. denied*.

## Conclusion

[26] The trial court properly denied Robinson's severance motion. There is insufficient evidence to support his conviction for Level 5 felony corrupt business influence, but we remand for imposition of judgments of conviction and sentence for two counts of Level 6 felony theft.

[27] Reversed and remanded.

Robb, J., concurs.

Altice, J., concurs and dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Charles Allen Robinson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
73A01-1506-CR-750

---

**Altice, J., concurring in part and dissenting in part.**

I concur fully with my colleagues' resolution of the severance issue, as well as its conclusion that the State presented sufficient evidence to support Robinson's conviction for the January 25, 2015 theft. However, I must part ways with the majority's conclusion that the State presented insufficient evidence to support Robinson's corrupt business influence conviction. I do not take issue with the majority's observation that the commission of any two predicate offenses will not necessarily support a RICO conviction. My disagreement is with the majority's conclusion that the specific facts of this case cannot support such a conviction.

The majority seems to suggest that Robinson's RICO conviction cannot stand because the predicate offenses are simply not serious enough. Indeed, they reason that "the commission of two acts of shoplifting of this type is [not] the

kind of activity our legislature meant to be covered by our RICO statute." Slip op. at ¶ 24. I disagree. The provision of the Indiana RICO act under which Robinson was convicted provides that a person "who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise . . . commits corrupt business influence, a Level 5 felony." I.C. § 35-45-6-2. In relevant part, the Indiana RICO Act defines "pattern of racketeering activity" as "engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents." I.C. § 35-45-6-1(d). "Racketeering activity" is specifically defined to include theft. I.C. § 35-45-6-1(e).

Thus, by the plain language of the statute, two acts of theft—even shoplifting—*can* support a RICO conviction. Moreover, the provision of the RICO Act under which Robinson was charged does *not* require that he act in concert with others in any sort of criminal enterprise. If the legislature wished to limit the reach of the RICO Act to more sophisticated criminals and members of organized crime syndicates like Lucky Luciano or Carlo Gambino, it could easily have done so. I believe the language of the statute is a better indicator of the legislature's intent than this court's decisional law. *See Jackson v. State*, No. 48S02-1509-CR-554, slip op. at 4 (Ind. March 2, 2016) (noting that to determine legislative intent, "we look first to the statutory language and give effect to the plain and ordinary meaning of statutory terms" and that "[w]here the language

is clear and unambiguous, there is no room for judicial construction" (citation and internal quotation marks omitted)).

I also respectfully disagree with the majority's conclusion that Robinson's offenses were isolated and sporadic. As our Supreme Court noted in *Jackson*, "[i]n some cases, proving that two or more criminal incidents are not isolated will be straightforward, as the very nature of the crimes will suggest that they are not sporadic." *Id.* at 7. I believe this is such a case. The predicate offenses were not merely similar—they were virtually identical. On two occasions less than a month apart, Robinson stole or attempted to steal components of the same home security system from the same store and in the same manner. In my view, the striking similarities between the predicate offenses were sufficient to permit a reasonable inference that the thefts were interrelated rather than isolated acts.

For all of these reasons, I would affirm Robinson's corrupt business influence conviction. Because the majority reverses Robinson's conviction, it does not reach his sentencing argument. I will not delve into a full analysis of Robinson's Appellate Rule 7(B) argument because I write separately. It suffices for these purposes to say that in light of Robinson's criminal history, which dates back to 1987 and includes ten felonies, I would not find the sentence imposed inappropriate. In sum, I would affirm Robinson's conviction and sentence in full.