## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 03 2017, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Adam Wakefield,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 3, 2017

Court of Appeals Case No.
09A04-1609-CR-2063

Appeal from the Cass Superior Court

The Honorable Richard Maughmer, Judge

Trial Court Cause No.
09D02-1505-F5-48

**Altice, Judge.**

**Case Summary**

[1]   Adam Wakefield appeals his convictions for Level 5 felony corrupt business influence, Level 5 felony conspiracy to commit theft, and Level 6 felony theft. He claims that certain evidence was improperly admitted at his jury trial.

[2]   We affirm.

### Facts & Procedural History

[3]   On May 9, 2015, an employee of the Walmart store in Logansport reported to asset protection associate Brady Herrington that she found an empty cellphone package that had been cut open and discarded in the sporting goods department. Herrington then reviewed store surveillance footage from earlier that day. In this footage, he followed the actions of a suspicious group of three men and one woman. Two of the individuals in the group were Wakefield and Kenny Purvis. Herrington observed a member of the group quickly grab a cellphone and then exit the aisle. He also saw the group in the video game aisle where Purvis was pointing out games while Wakefield and the other man grabbed them and placed them under clothing in a cart. The woman appeared to act as a lookout.

[4]   The group eventually separated with part of the group entering the sporting goods department, where the empty cellphone package was later found. At no point did any members of the group go through the checkout lane or pay for any merchandise. Purvis and Wakefield walked out of the store with a cart containing video games inside five or six Walmart shopping bags. Herrington testified that the store alarm was not working at the time.

Based on what he observed on the surveillance video, Herrington believed he had discovered an organized retail theft ring. He relayed the information to the Logansport Police Department, as well as to area stores and other Walmart employees.

On May 15, 2015, Herrington was advised that several security boxes used for high-end video games had been found empty in the light bulb aisle. In total, there were nine empty security boxes. Herrington reviewed security footage from earlier in the day, and once again observed Purvis and Wakefield in the store with two others. The group selected multiple copies of the same recently-released video game. Purvis then split off from the group and a took the cart into the light bulb aisle, where there was no surveillance camera. The group left the store but later returned and went back to the cart in the light bulb aisle. After a period of time, the group took an unusual route through the store and left without making a purchase. They drove away in a red pickup truck.

Wakefield and Purvis returned to the Walmart store with Charlene Renier on May 19, 2015. Amy Powers, another asset protection associate like Herrington, saw a live camera shot of them in the video game aisle. Powers contacted the local police for assistance with apprehending the individuals, and she continued to surveil them. The group eventually split and Powers followed Wakefield, who had the cart. Wakefield pushed the cart to the front of the store, where he was stopped by Powers and a police officer. The cart contained nearly $450 worth of merchandise, including nine video games. Purvis and Renier were stopped by an officer in a different area of the store. All three were taken to the

store's asset protection office. Wakefield had four used Walmart bags tucked in his pocket.

[8] The red pickup truck the trio had driven to Walmart was searched by police in the parking lot, with Purvis's consent. A Walmart bag containing eight new Witcher 3 – Wild Hunt video games was found in the back seat of the truck. That game had just been released for sale that day, and Purvis admitted to police that they had been stolen.

[9] During an interview at the jail, Wakefield acknowledged that he intended to steal video games inside Walmart that day. He also admitted that Purvis had driven him to the Logansport Walmart two other times in the previous two weeks, and he (Wakefield) had stolen approximately twenty video games by placing them in used Walmart bags and walking out of the store. Wakefield downplayed Purvis's involvement in the thefts.

[10] A subsequent investigation revealed that for several months Purvis had been offering for sale unopened video games at very low prices on a Facebook group titled Wabash County Sell Anything. Many of the new games pictured had visible Walmart stickers on them. Several screen shots were admitted into evidence of Purvis's for-sale posts in this group from December 15, 2014 to May 9, 2015. Detective Eric Smith testified that Purvis even took orders for games and arranged for transactions to take place at the Logansport Walmart.

[11] Wakefield's jury trial commenced on August 8, 2016, at the conclusion of which he was found guilty as charged of Level 5 felony corrupt business

influence, Level 5 felony conspiracy to commit theft, and Level 6 felony theft. Following the jury's verdict, Wakefield admitted that he was a habitual offender. He was subsequently sentenced to an aggregate term of twelve years in prison. Wakefield now appeals, challenging the admission of certain items of evidence as either an abuse of discretion or fundamental error. Additional information will be provided below as needed.

## Discussion & Decision

### Standard of Review

[12] Our standard of review for rulings on the admissibility of evidence is well-settled. Admission or exclusion of evidence rests within the trial court's sound discretion and its decision is reviewed for an abuse of that discretion. *Sciaraffa v. State*, 28 N.E.3d 351, 356 (Ind. Ct. App. 2015), *trans. denied*. The trial court's decision must be clearly erroneous and against the logic and effect of the facts and circumstances before it constitutes an abuse of discretion. *Id.*

[13] Wakefield acknowledges that he failed to object to the admission of some of the evidence at issue, thereby failing to preserve his claim for appellate review. *See id.* To avoid waiver, he invokes the fundamental error exception which permits appellate review of otherwise procedurally defaulted claims under narrow circumstances. *Id.* "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d

578, 587 (Ind. 2006).  This exception is available only in egregious circumstances.  *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

## Mug Shots

[14]  Wakefield challenges the admission into evidence of mug shot photographs of himself and Purvis following their arrests related to the instant case.  To avoid waiver, he asserts that the use of this evidence constituted fundamental error because it was irrelevant and unfairly prejudicial.

[15]  Wakefield essentially ignores the fundamental error standard and simply presents an argument based on Indiana Evidence Rule 403.  We agree that under the circumstances of this case the mug shots had little probative value, but they also had minimal prejudicial effect.  Their admission certainly did not constitute fundamental error.

[16]  As our Supreme Court has recognized, the typical objection to mug shots is to photographs taken in conjunction with a prior arrest.  *Wheeler v. State*, 749 N.E.2d 1111, 1114 (Ind. 2001).  The objection is usually based on the danger that jurors may infer a criminal history.  *Id*.  The photographs of Wakefield, here, were taken at the time of his arrest on the current charges and were clearly marked with the arrest date, May 19, 2015.  Although the booking photographs of Purvis were dated November 4, 2015, the record makes clear that his arrest

related to the instant case was delayed until that date.[1] Purvis's and Wakefield's arrests in this case were no surprise to the jury and had little prejudicial effect. *See Wheeler*, 749 N.E.2d at 1114 (noting that a jury would naturally presume that the defendant was arrested on the underlying charge).

### Facebook Evidence

[17] Next, Wakefield argues that the jury was "likely influenced by the admission of irrelevant, confusing, and prejudicial materials about Purvis's purported activities on Facebook." *Appellant's Brief* at 17. Wakefield preserved an objection based on relevance below.[2] On appeal, he argues that the evidence was irrelevant because it was "completely unrelated to Wakefield and did not relate to any fact at issue." *Id*. at 18.

[18] "Relevant evidence" is defined as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Ind. Evidence Rule 401. Evidence that is relevant is generally admissible. Ind. Evidence Rule 402.

[19] Here, in order to obtain a conviction for corrupt business influence as charged, the State was required to establish that Wakefield was associated with an

---

[1] Officer Shonn Parmeter testified that Wakefield was "incarcerated from Walmart" but that Purvis was released because he agreed to assist "in further investigation on identifying the other suspects." *Transcript* at 104.

[2] Wakefield did not assert an argument based on Ind. Evidence Rule 403 at trial regarding this evidence, except to argue that a couple of the screen shots were redundant. The jury was made aware of the slight redundancy in Exhibit 6, and we do not find that this caused the exhibit to be inadmissible.

enterprise and knowingly participated in the activities of that enterprise through a pattern of racketeering activity. *See* Ind. Code § 35-45-6-2(3); *Appendix Vol. II* at 95. "Enterprise" is defined to include a group of people associated in fact. I.C. 35-45-6-1(c)(2). A "pattern of racketeering activity" is defined as "engaging in at least two (2) incidents of racketeering activity[3] that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents." I.C. § 35-45-6-1(d). Because "the statute does not apply to sporadic or disconnected criminal acts", the State must "demonstrate that the criminal incidents were in fact a 'pattern' and not merely 'isolated' incidents. And evidence of the degree of continuity…is certainly helpful in establishing the necessary 'pattern.'" *Jackson v. State*, 50 N.E.3d 767, 775-76 (Ind. 2016). *See also Robinson v. State*, 56 N.E.3d 652, 658-60 (Ind. Ct. App. 2016), *trans. denied*.

[20] The evidence presented at trial indicated that Purvis was the enterprise leader and that Wakefield participated in the enterprise's criminal activity on at least three separate occasions. Purvis's Facebook activity involving the sale of new, unopened video games in the months leading up to and including May 9, 2015, was relevant to establishing that the thefts were not isolated incidents and were part of a pattern of racketeering activity and an ongoing criminal enterprise.

---

[3] Racketeering activity includes committing, attempting to commit, conspiring to commit, or aiding and abetting in the commission of theft. I.C. § 35-45-6-1(e)(14).

Accordingly, the trial court did not abuse its discretion by admitting this evidence.

## Hearsay

[21] Finally, in a brief argument, Wakefield challenges Officer Parmeter's testimony that Purvis told him the eight video games in the truck were stolen.[4] He claims that this constituted inadmissible hearsay but acknowledges that he did not object below. Thus, Wakefield asserts that admission of this evidence amounted to fundamental error.

[22] Even assuming that this statement was inadmissible hearsay, we cannot find fundamental error in its admission. Wakefield himself admitted to stealing twenty video games from the Logansport Walmart in the two weeks prior to his arrest. Moreover, he acknowledged that he intended to steal the nine video games secreted in his cart at the time he was stopped in the store on May 19, 2015. During a subsequent search, officers found eight new video games in a Walmart bag inside the truck. These games – all the same title – had just been released for sale that day. Under the circumstances, the jury could reasonably infer that these games too were stolen. In light of the overwhelming evidence of

---

[4] This testimony resulted from a jury question regarding the video games found in the truck on May 19, 2015. The court inquired on behalf of the juror: "Do you have any idea when they were stolen or placed in the truck." *Transcript* at 106. When Officer Parmeter responded "I was advised by Kenny Purvis when they were stolen", the court stopped Parmeter and indicated that he could not testify to that. *Id.*

guilt, the admission of Purvis's statement that these games were indeed stolen was at most harmless error and certainly not fundamental.[5]

[23]    Judgment affirmed.

[24]    Kirsch, J. and Mathias, J., concur.

---

[5] Wakefield has also failed to establish that the cumulative effect of the mugshot and hearsay evidence amounted to fundamental error.